UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
ANTHONY OLIVIERI, JR.,

                    Plaintiff,

   -against-

WALDBAUM, INC., APW SUPERMARKETS, INC.,
RICHARD SICURANZA, MICHAEL IBANEZ,
and JAMES ARGENZIANO,

                    Defendants.
------------------------------------------------------------------x

**MEMORANDUM & ORDER**

12-CV-1195 (SLT)(MDG)

**TOWNES, United States District Judge:**

      Plaintiff Anthony Olivieri, Jr., ("Plaintiff"), a part-time maintenance worker, brings this action against Waldbaum, Inc. ("Waldbaum") and APW Supermarkets ("APW"), (together, "Waldbaum Defendants"), as well as individual defendants Richard Sicuranza, Michael Ibanez, and James Argenziano. Plaintiff alleges hostile work environment claims under the Americans with Disabilities Act, 42 U.S.C. § 12112(a) (the "ADA"), the New York State Human Rights Law, N.Y. Exec. L. § 296 (the "NYSHRL"), and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq., (the "NYCHRL"), as well as other state law tort claims. Waldbaum Defendants now move to dismiss the majority of Plaintiff's claims pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure and to strike certain allegations pursuant to Rule 12(f) of the Federal Rules of Civil Procedure. (Docket No. 32). For the reasons set forth below, Waldbaum Defendants' motion is granted in part and denied in part.

I.   BACKGROUND

   A.   Facts

Unless otherwise indicated, the following facts are drawn from the complaint and are assumed to be true for purposes of this motion.

Plaintiff is a 42-year-old autistic man who has been diagnosed on the "borderline range of mental retardation." (Compl. ¶ 1). He functions cognitively at the level of a 12-year-old and suffers from Asperger's syndrome as well as other learning disabilities. (Compl. ¶ 1). Plaintiff is "extremely susceptible to suggestion . . . [and] manipulation and [is] vulnerable to emotional abuse." (Compl. ¶ 2). In particular, Plaintiff lacks the ability to assess normally the actions and motivations of others as well as to recognize appropriate boundaries. (Compl. ¶ 2). He is "quite easily taken advantage of" and although "a physically mature adult, [he] is sexually naïve." (Compl. ¶ 2).

Plaintiff has been employed since 1996 as a part-time maintenance worker at Waldbaum's supermarket on Staten Island, New York. (Compl. ¶¶ 2, 7). He obtained his position through a non-profit organization that assists developmentally disabled adults with finding and retaining employment. (Compl. ¶ 7). At all relevant times, Plaintiff was able to perform the essential functions of his job, which included sweeping, cleaning, trash disposal, and related activities. (Compl. ¶ 7). Plaintiff was employed during this period by Waldbaum and APW, both of which commenced voluntary bankruptcy petitions on December 12, 2010 ("Petition Date") under Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq., and have served as debtors-in-possession since the Petition Date. (Compl. ¶¶ 8, 9). Defendant Sicuranza is Waldbaum's Baker Manager at the Staten Island supermarket. (Compl. ¶ 10). Defendant Ibanez was an employee in Waldbaum's Meat Department during the relevant time period.

(Compl. ¶ 11). Defendant Argenziano, who previously worked with Ibanez in the Meat Department, was employed in Waldbaum's Seafood Department during the relevant time period. (Compl. ¶ 12). On March 5, 2012, Ibanez and Argenziano were arrested and charged by the Staten Island District by the Staten Island District Attorney's office with third degree obscenity in connection with certain events alleged in this case. (Compl. ¶¶ 11, 12).

Through at least 2009 and 2010, various Waldbaum's personnel in different departments, including those with managerial or supervisory authority, verbally abused Plaintiff nearly every day "on the basis of his autism-induced sexual naivete." (Compl. ¶¶ 30, 32). Ibanez engaged in these actions in the presence and with the encouragement of Argenziano. (Compl. ¶ 30). Plaintiff was repeatedly asked to display his genitals to female co-workers as well as harassed with general graphic sexual discussion and conversation about his own sexual activities. (Compl. ¶ 32). As a result of these actions, Plaintiff was eventually referred to therapy because he felt unable to discuss these matters with his parents. (Compl. ¶ 33). During this period, a co-worker also convinced Plaintiff to share a portion of his weekly pay until Plaintiff's parents discovered the arrangement and "reported to the authorities." (Compl. ¶ 34).

On March 10, 2011, Ibanez and Argenziano brought Plaintiff to a back room of the Meat Department, where they induced him to lower his pants and underwear and allow Ibanez to take cellphone photographs of his genitals. (Compl. ¶ 21). Later that day, Ibanez and Argenziano showed and discussed these pictures with "at least several other individuals" in and out of Plaintiff's presence, including Sicuranza and a female co-worker. (Compl. ¶ 22). The female co-worker told Plaintiff, "I can't believe you did this," and Sicuranza "expressly told" Plaintiff that he had seen the photographs. (Compl. ¶¶ 23, 26). Argenziano thereafter brought Plaintiff

back to the same room to take his own cellphone photographs of Plaintiff's genitals. (Compl. ¶ 24).

On March 17, 2011, Plaintiff was working his regular shift when he was "accosted" by Sicuranza, who brought him down a hallway to a back room of the Meat Department, leaving him with Ibanez and Argenziano, who were waiting there. (Compl. ¶ 18). March 17 was the first day after March 10 on which Plaintiff's shift overlapped with Sicuranza's work schedule. (Compl. ¶ 39). In the back room, Ibanez and Argenziano induced Plaintiff "with encouragement and instruction" to lower his pants and underwear, expose his genitals, and masturbate while they photographed and videotaped him with their cellphone cameras. (Compl. ¶ 19). According to a hallway security camera, less than 50 seconds after Plaintiff left the room, Sicuranza met him in the hallway and said, "Don't let them do that to you again." (Compl. ¶ 25). Over multiple days, Ibanez and Argenziano laughed about these events with various Waldbaum personnel and displayed the depictions of Plaintiff "all around the supermarket." (Compl. ¶ 20).

At some point, one or more "individuals refused to remain silent or intimidated . . . and the police were notified." (Compl. ¶ 36). Waldbaum "belatedly terminated" the employment of Sicuranza, Ibanez, and Argenziano based on the March 17, 2011, events. (Compl. ¶ 37). The store employees' union then brought an arbitration seeking the reinstatement of Sicuranza, who is its shop steward. (Compl. ¶ 37). Counsel for Plaintiff's family was not allowed to participate in the arbitration and Plaintiff alleges that Waldbaum informed his family that "there was no chance the arbitration could be won" because the union was allowed to select a friendly arbitrator. (Compl. ¶ 38). The arbitrator ultimately reinstated Sicuranza, in part, according to Plaintiff, because neither Waldbaum nor the arbitrator elicited relevant evidence about the acts

committed against Plaintiff or properly considered the vulnerability caused by his disability. (Compl. ¶¶ 39-41).

After Sicuranza resumed his former position as Manager of the Bakery Department, Waldbaum "refused all entreaties" by Plaintiff's family to move Sicuranza to another store or buy him out of his employment. (Compl. ¶ 42). Instead, Waldbaum adjusted Plaintiff's hours to avoid any direct contact with Sicuranza during their working days. (Compl. ¶ 43). While this change was "certainly better than nothing," it also presented a disruption in routine that "complicated [Plaintiff's] life and exacerbated his . . . emotional pain and distress" because his disability makes "any change in his environment or routine . . . extremely disruptive to his state of mind and daily functioning." (Compl. ¶ 43). Additionally, Sicuranza retains his position as shop steward of Plaintiff's union, "the person to whom [Plaintiff] is supposed to look for protection." (Compl. ¶ 43).

On January 9, 2012, Plaintiff filed a charge of discrimination with the Equal Opportunity Employment Commission ("EEOC"), complaining of this conduct and the EEOC issued a right to sue letter on February 23, 2012. (Compl. ¶ 15).

### B. Procedural History

On March 12, 2012, Plaintiff commenced this action against Waldbaum Defendants and individual defendants Sicuranza, Ibanez, and Argenziano. (Docket No. 1). As to Waldbaum Defendants, Plaintiff asserts hostile work environment claims under the ADA, NYSHRL, and NYCHRL, as well as state law tort claims for assault, battery, and intentional infliction of distress ("IIED"). He has voluntarily withdrawn three causes of action alleging disability discrimination under the ADA, NYSHRL, and NYCHRL. (Docket No. 36 ("Pl. Opp.") at 4 n.2).

Waldbaum Defendants have filed a partial motion to dismiss, arguing that Plaintiff fails to state a claim as to the state law torts; that all state and city law hostile work environment claims are preempted by § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a); and that the Court should decline to exercise supplemental jurisdiction over Plaintiff's NYCHRL hostile work environment claim. Additionally, Waldbaum Defendants argue that Plaintiff's earlier allegations should be dismissed or stricken pursuant to Rule 12(f) because they are time-barred or were discharged in bankruptcy. They do not seek to dismiss Plaintiff's ADA hostile environment claim. (Docket No. 33 ("Defs. Mem.") at 9 n.10). Plaintiff counters, inter alia, that his state law discrimination claims are not preempted, that he has made out a claim as to the state law torts, and that allegations concerning the earlier period should be permitted under the "continuing violation" doctrine. The individual defendants are not parties to this motion.

### III. DISCUSSION

#### A. Motion to Dismiss

##### 1. Legal Standard

In considering a motion to dismiss pursuant to Rule 12(b), a court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. See Ruotolo v. City of New York, 514 F.3d 184, 188 (2d Cir. 2008). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a complaint must allege sufficient facts "to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). This plausibility standard applies

in the employment discrimination context, so that a complaint "must include only a short and plain statement of the claim" and "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002); see Patane v. Clark, 508 F.3d 106, 113 (2d Cir. 2007) (applying Swierkiewicz to NYSHRL and NYCHRL discrimination claims); Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 241 (2d Cir. 2007) (applying Swierkiewicz to hostile work environment claims at pleadings stage). Plaintiffs typically are not required "to anticipate affirmative defenses in formulating a complaint." Ibarzabal v. Morgan Stanley DW, Inc., 333 Fed. App'x 605, 606 (2d Cir. 2009) (citing Gomez v. Toledo, 446 U.S. 635, 640 (1980)).

Finally, while materials outside the four corners of the complaint are "generally not considered on a motion to dismiss unless the court treats it as one for summary judgment," Nicholls v. Brookdale Univ. Hosp. Med. Ctr., No. 03-CV-6233 (JBW), 2004 WL 1533831, at *2 (E.D.N.Y. July 9, 2004), a court can consider "documents attached to the complaint as an exhibit or incorporated in it by reference, . . . matters of which judicial notice may be taken, or . . . documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit," Brass v. Am. Film Technologies, Inc., 987 F.2d 142, 150 (2d Cir. 1993).

### 2. State Law Tort Claims

#### a. Intentional Infliction of Emotional Distress

To state a claim for IIED under New York law, a plaintiff must plausibly allege: "(1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." Stuto v. Fleishman, 164 F.3d 820, 827 (2d Cir. 1999). While such a claim is subject to a one-year statute of limitations, "when the alleged

offense is part of an ongoing pattern of harassment, the continuing tort doctrine permits a plaintiff to rely on wrongful conduct occurring more than one year prior to commencement of the action, so long as the final actionable event occurred within one year of the suit." Robles v. Cox and Co., Inc., 841 F. Supp. 2d 615, 630 (E.D.N.Y. 2012) (internal brackets, ellipses, and quotation marks omitted). In its application, "the standard for stating a valid claim of [IIED] is rigorous, and difficult to satisfy." Conboy v. AT & T Corp., 241 F.3d 242, 258 (2d Cir. 2001). The alleged conduct must have been "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." Sullivan v. Andino, No. 09 Civ. 3668 (VB), 2012 WL 4714766, at *7 (S.D.N.Y. Sept. 18, 2012) (citing Murphy v. Am. Home Prods. Corp., 58 N.Y.2d 293, 303 (N.Y. 1983)). Whether the challenged conduct is sufficiently outrageous is typically determined as a matter of law. See Howell v. New York Post Co., 81 N.Y.2d 115, 121 (1993)).

The Court finds in this case that Plaintiff has stated a claim for IIED. Assuming the truth of the factual allegations set forth in the complaint, Plaintiff was not simply harassed with sexual discussion by those who understood the limitations of his disability, but also induced to expose himself and perform a sexual act that was recorded on cellphones and shared with employees throughout the store. These allegations, taken as a whole, constitute outrageous conduct "utterly intolerable in a civilized society." Sullivan, 2012 WL 4714766, at *7.

### b. Assault and Battery

To state claims for assault and battery under New York law, a plaintiff must allege "an intentional placing of another person in fear of imminent harmful or offensive contact" and "an intentional wrongful physical contact with another person without consent," respectively. Girden v. Sandals Int'l, 262 F.3d 195, 203 (2d Cir. 2001) (citation and internal quotation marks

omitted). Plaintiff's allegation that he was "accosted" by Sicuranza and brought to Ibanez and Argenziano in a back room of the supermarket satisfy these standards.

        **c.     Employer Liability**

As Plaintiff has plausibly stated claims for the intentional torts of IIED, assault, and battery against certain individual defendants, the Court must determine whether Waldbaum Defendants could be held liable for the acts of their employees.

The doctrine of respondeat superior "renders a master vicariously liable for a tort committed by his servant while acting within the scope of his employment." Adorno v. Correctional Services Corp., 312 F. Supp. 2d 505, 516 (S.D.N.Y. 2004) (quoting Riviello v. Waldron, 47 N.Y.2d 297, 302 (1979)). The New York Court of Appeals has set forth five factors for determining whether tortious acts have been committed within the scope of employment: "[1] the connection between the time, place and occasion for the act, [2] the history of the relationship between employer and employee as spelled out in actual practice, [3] whether the act is one commonly done by such an employee, [4] the extent of departure from normal methods of performance, [and][5] whether the specific act was one that the employer could reasonably have anticipated." Haybeck v. Prodigy Servs. Co., 944 F. Supp. 326, 329 (S.D.N.Y. 1996) (citing Riviello, 47 N.Y.2d at 302). Yet, "an employer is not liable for torts committed by the employee for personal motives unrelated to the furtherance of the employer's business." Swarna v. Al-Awadi, 622 F.3d 123, 144 (2d Cir. 2010) (internal quotation marks and citations omitted).

The Court is mindful that whether a particular act falls within the scope of employment is "heavily dependent on factual considerations," and "ordinarily [a question] for the jury." Clark Street Wine and Spirits v. Emporos Systems Corp., 754 F. Supp. 2d 474, 486 (E.D.N.Y. 2010) (quoting Riviello, 47 N.Y.2d at 303). Nevertheless, "where a court takes as true all the facts

alleged by plaintiff and concludes that the conduct complained of cannot be considered as a matter of law within the scope of employment, then the court must dismiss the complaint for failure to state a claim." Haybeck, 944 F. Supp. at 329 (collecting cases); "New York courts consistently have held that sexual misconduct and related tortious behavior arise from personal motives and do not further an employer's business, even when committed within the employment context." Swarna, 622 F.3d at 144-45 (quoting Ross v. Mitsui Fudosan, Inc., 2 F. Supp. 2d 522, 531 (S.D.N.Y. 1998) (granting motion to dismiss)); see Girden v. Sandals Intern., 262 F.3d 195, 205-06 (2d Cir. 2001) ("In many New York cases, courts have held as a matter of law that an employer was not responsible for a sexual assault committed by an employee because the attack was outside the scope of the employee's duties.") (collecting cases); N.X. v. Cabrini Med. Ctr., 97 N.Y.2d 247, 251 (2002) ("A sexual assault perpetrated by a[n] . . . employee is not in furtherance of . . . business and is a clear departure from the scope of employment, having been committed for wholly personal motives.").

The Court therefore dismisses the vicarious liability claims for IIED, assault, and battery as against Waldbaum Defendants because the alleged conduct of Sicuranza, Ibanez, and Argenziano is outside the scope of their employment.

### 3. State and City Law Hostile Work Environment Claims

Waldbaum Defendants next argue that Plaintiff's NYSHRL and NYCHRL hostile work environment claims are preempted by § 301 of the LMRA because resolution of these claims requires interpretation of the term "supervisor" in the CBA.

#### i. § 301 of LMRA

"The Supreme Court of the United States has long held that Section 301 gives federal courts jurisdiction over controversies involving collective bargaining agreements." Zuckerman

v. Volume Servs. Am., Inc., 304 F. Supp. 2d 365, 368 (E.D.N.Y. 2004) (citing Textile Workers v. Lincoln Mills, 353 U.S. 448, 456 (1957)). In practice, that means "a suit in state court alleging a violation of a provision of a labor contract must be brought under § 301 and be resolved by reference to federal law." Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 210 (1985). The preemptive effect of § 301 applies not only to questions that "arise in the context of a suit for breach of contract," but also to those "in a suit alleging liability in tort." Id. at 211. Still, "not every dispute concerning employment, or tangentially involving a provision of a [CBA], is pre-empted by § 301." Id. Indeed, "the bare fact that a [CBA] will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." Wynn v. AC Rochester, 273 F.3d 153, 157-58 (2d Cir. 2001) (quoting Livadas v. Bradshaw, 512 U.S. 107, 124 (1994)). The pivotal question is whether "resolution of a state-law claim depends on an interpretation of the CBA," Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246, 261 (1994), or whether "the claims exist independent of any rights established by the CBA," House v. Wackenhut Services, Inc., No. 10 Civ. 9476 (CM) (FM), 2011 WL 6326100, at *6 (S.D.N.Y. Dec. 16, 2011) (quoting Allis-Chalmers, 471 U.S. at 213) (internal brackets omitted). This distinction is "more easily expressed than applied." Wynn, 273 F.3d at 157.

### ii. Hostile Work Environment

To determine whether § 301 preemption applies, the court begins with "consideration of the elements of plaintiff's stated claim." Zuckerman, 304 F. Supp. 2d at 370 (citing Foy v. Pratt & Whitney Grp., 127 F.3d 229, 233 (2d Cir. 1997). Next, the court "considers whether adjudication of any element of that claim requires interpretation of the parties' CBA." Bryant v. Verizon Communications, Inc., 550 F. Supp. 2d 513, 527 (S.D.N.Y. 2008) (citing Foy, 127 F.3d at 233). As noted, if a claim can be resolved "without construing the terms of the CBA, the state

claim may proceed" and the "fact that a CBA must be consulted or referred to . . . does not necessarily lead to preempt[ion]." Id.

Hostile work environment claims brought under the NYSHRL are generally governed by the same standard as federal hostile work environment claims brought under Title VII and the ADA. See Summa v. Hofstra Univ., 708 F.3d 115, 123-24 (2d Cir. 2013) ("Hostile work environment claims under both [federal law] and the NYSHRL are governed by the same standard." (citing Schiano v. Quality Payroll Sys., Inc., 445 F.3d 597, 609 (2d Cir. 2006))). A plaintiff must show that the alleged conduct "(1) is objectively severe or pervasive – that is, creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of [a] protected characteristic." Robinson v. Harvard Prot. Servs., 495 F. App'x 140, 141 (2d Cir. 2012) (internal quotation marks omitted). Under the more protective NYCHRL, however, "the activity that allegedly creates a hostile work environment need not be pervasive or severe." Williams v. Metro-North Commuter R.R. Co., No. 11 Civ. 7835 (CM), 2012 WL 2367049, at *13 (S.D.N.Y. June 20, 2012) (citing Williams v. New York City Hous. Auth., 872 N.Y.S. 2d 27 (1st Dep't 2009)). While NYCHRL claims therefore "must be given an independent liberal construction," Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 278 (2d Cir. 2009), a plaintiff must still "link[] his claim of hostility to some attitude that the law forbids," Williams, 2012 WL 2367049, at *13.

Under the NYSHRL, liability for an employee's discriminatory conduct many not be imputed to an employer "unless the employer became a party to it by encouraging, condoning, or approving it." Forrest v. Jewish Guild for Blind, 3 N.Y.3d 295, 305, 311 (2004) (quoting Matter

of State Div. of Human Rights v. St. Elizabeth's Hosp., 66 N.Y.2d 684, 687 (1985)). Under the NYCHRL, an employer is liable for the discriminatory acts of an employee where:

> (1) The employee or agent exercised managerial or supervisory responsibility; or
>
> (2) The employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or
>
> (3) The employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

N.Y.C. Admin. Code § 8–107(13)(b). Wadlbaum Defendants argue that Plaintiff's NYSHRL and NYCHRL claims are preempted by § 301 because "[i]n order to make the determination as to Defendant Sicuranza's supervisory or non-supervisory status, the Court will be required to review, analyze and interpret provisions of the CBA." (Defs. Mem. at 16). They contend that "the CBA makes clear" that Sicuranza is not a supervisor and does not have the authority to take or even recommend disciplinary action against a union member. (Defs. Mem. at 16). In response, Plaintiff concedes that "for purposes of the [CBA], Sicuranza is not . . . a 'supervisor,'" but argues that his status under the CBA "is not at all determinative . . . of whether he has 'managerial or supervisor responsibilities' under the applicable anti-discrimination laws." (Pl. Opp. at 6-7). Plaintiff relies on Mack v. Otis Elevator Co., 326 F.3d 116 (2d Cir. 2003), in which the Second Circuit applied a broader test for supervisory status, including whether "[t]he individual has authority to direct the employee's daily work activities." Mack, 326 F.3d at 127 (quoting EEOC Enforcement Guidance on Vicarious Employer Liability for Unlawful Harassment by Supervisors, 8 FEP Manual (BNA) 405:7654 (1999) ("EEOC Guidance")).

13

However, the Supreme Court recently abrogated Mack, holding that "supervisor" means only an employee "empowered . . . to take tangible employment actions against the victim, i.e., to effect a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Vance v. Ball State Univ., 133 S.Ct. 2434, 2443 (2013) (internal quotation marks omitted). While Plaintiff's papers appear to suggest that Sicuranza would not be a supervisor under the Vance definition, to the extent that issue is unresolved as to his NYSHRL and NYCHRL claims, it is not a question of interpreting the CBA. Indeed, "this case does not involve a tort premised on the violation of duties in the CBA" and while "[r]eference to the CBA may be needed . . . [s]tate law – not the CBA – is the source of the rights asserted by plaintiff[]." Wynn, 273 F.3d at 159 (quoting Foy, 127 F.3d at 235). Accordingly, Waldbaum Defendants' motion to dismiss the NYSHRL and NYCHRL claims as preempted under § 301 is denied.

### 4. Supplemental Jurisdiction

Waldbaum Defendants next argue that the Court should decline to exercise supplemental jurisdiction over Plaintiff's NYCHRL hostile work environment claim because, in the event Sicuranza is deemed a supervisor, certain affirmative defenses available under the ADA and NYSHRL are not permitted under the more protective NYCHRL. (Defs. Mem. at 18).

"The exercise of supplemental jurisdiction is within the sound discretion of the district court." Lundy v. Catholic Health System of Long Island Inc., 711 F.3d 106, 117 (2d Cir. 2013) (citing Carnegie–Mellon Univ. v. Cohill, 484 U.S. 343, 349-50 (1988)). In deciding whether to exercise supplemental jurisdiction, "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity." Carnegie-Mellon, 484 U.S. at 350. Most of the cases cited by Waldbaum Defendants

(in which the court declined to exercise supplemental jurisdiction) were decided in the context of a summary judgment motion where the court also dismissed all federal claims. (See Defs. Mem. at 19-20). In this case, however, the ADA hostile work environment claim remains and this Court finds it appropriate to exercise supplemental jurisdiction over Plaintiff's NYCHRL claim. See Brown v. City of New York, No. 11 Civ. 2915 (PAE), 2013 WL 3789091, at *18 n.14 (S.D.N.Y. July 19, 2013) ("The Court exercises supplemental jurisdiction . . . because one federal claim remains in the case and it is closely related to the state and city law claims.").

### B. Motion to Strike

Pursuant to Rule 12(f), a court "may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." The decision is left to the discretion of the district court. E.E.O.C. v. Bay Ridge Toyota, Inc., 327 F. Supp. 2d 167, 170 (E.D.N.Y. 2004). In general, "[m]otions to strike are not favored and will not be granted unless it is clear that the allegations in question can have no possible bearing on the subject matter of the litigation." Lynch v. Southampton Animal Shelter Foundation Inc., 278 F.R.D. 55, 63 (E.D.N.Y. 2011) (internal quotation marks and citations omitted); see Lipsky v. Commonwealth United Corp., 551 F.2d 887, 893 (2d Cir. 1976) ("[C]ourts should not tamper with the pleadings unless there is a strong reason for so doing.").

Waldbaum Defendants request that the Court strike all of Plaintiff's allegations arising from "pre-December 12, 2010 conduct" because claims relating to these allegations were discharged in bankruptcy as of that date. (Defs. Mem. at 21); see 11 U.S.C. § 1141(d)(1)(A) ("[T]he confirmation of a plan . . . discharges the debtor from any debt that arose before the date of such confirmation."). They also argue that Plaintiff's "allegations of 2009-2010 verbal abuse and those concerning the events of March 10, 2011 are procedurally barred with respect to

15

Plaintiff's federal claims" because these events occurred outside of the EEOC's 300-day window. (Defs. Mem. at 22); see Johnson v. The Trustees of Columbia University, No. 00 Civ. 8118 (WK) (RLE), 2003 WL 2013371, at *2 (S.D.N.Y. 2003) ("[T]he statute of limitations for filing a charge of discrimination with the EEOC is 300 days."). In response, Plaintiff argues that Waldbaum Defendants "fail[] to take account of . . . the continuing-violation doctrine." (Pl. Opp. at 25); see Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 105 (2002) ("[C]onsideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as an act contributing to that hostile environment takes place within the statutory time period.").

First, the Court is not persuaded that any of the targeted allegations constitutes a "redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P 12(f). Second, while Waldbaum Defendants are correct that damages as to the pre-discharge acts appear to be foreclosed by the bankruptcy proceedings, evidence from that period would nevertheless be relevant to show the continuing nature of Plaintiff's hostile work environment claims. See O'Loghlin v. County of Orange, 229 F.3d 871, 876 (9th Cir. 2000) ("Evidence of violation in the pre-discharge period is, of course, relevant to the continuing nature of the violation, even though no damages may be rewarded for that earlier period."); Llanos v. City of New York, No. 11 Civ. 3953 (DLC), 2012 WL 5457916, at *7 n.12 (S.D.N.Y. Nov. 7, 2012) ("Insofar as [plaintiff] refers to acts that occurred prior to [discharge], those acts may be admissible as evidence in support of a timely claim.") (citing Morgan, 536 U.S. at 113)). Accordingly, Waldbaum Defendants' motion to strike is denied.

## IV. CONCLUSION

For the reasons set forth above, Waldbaum Defendants' motion to dismiss is granted in part and denied in part, and their motion to strike is denied. (Docket No. 32). Accordingly, the surviving causes of action as to Waldbaum Defendants include only the hostile work environment claims under the ADA, NYSHRL, and NYCHRL. As noted, the individual defendants were not parties to this motion.

**SO ORDERED.**

_____/S/_____
SANDRA L. TOWNES
United States District Judge

Dated: September 30, 2013
Brooklyn, New York